# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, *ex rel*. FERRARA, *et al.*, )<br>)<br>) | |
| Plaintiffs, ) | Civil Action No. 11-0074 (RBW) |
| ) | |
| v. ) | |
| ) | |
| NOVO NORDISK, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

_____

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, *ex rel*. MYERS, )<br>)<br>) | |
| Plaintiffs, ) | Civil Action No. 11-1596 (RBW) |
| ) | |
| v. ) | |
| ) | |
| NOVO NORDISK, INC., ) | |
| ) | |
| Defendant. ) | |

_____

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, *ex rel*. DASTOUS, )<br>)<br>) | |
| Plaintiffs, ) | Civil Action No. 11-1662 (RBW) |
| ) | |
| v. ) | |
| ) | |
| NOVO NORDISK, INC., ) | |
| ) | |
| Defendant. ) | |

_____

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, *ex rel*. STEPE, )<br>)<br>) | |
| Plaintiffs, ) | Civil Action No. 13-221 (RBW) |
| ) | |

| | |
|---|---|
| v. | ) |
| | ) |
| NOVO NORDISK, INC., | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |
| | ) |
| UNITED STATES OF AMERICA, *et al.*, | ) |
| *ex rel.* KENNEDY, | ) |
| | )    Civil Action No. 13-1529 (RBW) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| NOVO A/S, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |
| | ) |
| UNITED STATES OF AMERICA, *et al.*, | ) |
| *ex rel.* DOE, *et al.*, | ) |
| | )    Civil Action No. 1:17-00791 (RBW) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| NOVO NORDISK, INC., *et al.* | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**UNITED STATES OF AMERICA'S
MEMORANDUM IN SUPPORT OF THE REQUESTED
<u>PARTIAL LIFTING OF THE SEAL IN THE STIPULATIONS OF DISMISSAL</u>**

In response to the Court's order during the September 1, 2017, telephonic conference, the

United States submits the following memorandum in support of the partial lifting of the seal

ordered in the above-captioned cases.  As described in more detail below, it is appropriate for

certain pre-election filings in these actions to remain under seal and not be made public (including,

but not limited to, any applications filed by the United States for extensions of the sixty-day

investigative period, any applications for partial lifting of the seal, and any orders previously entered in this matter) because such papers discuss the content and extent of the United States' investigation of this matter which is not subject to public disclosure and the extension applications specifically are provided by law to the Court alone for the sole purpose of evaluating whether the seal and time for making an election to intervene should be extended.

## BACKGROUND

In each of the above-captioned cases, Relators assert claims on behalf of the United States and multiple states alleging that Novo Nordisk violated the federal False Claims Act (FCA) and certain state counterparts or other state statutes.  On July 26, 2017, the United States, Relators, and Novo Nordisk entered into a Settlement Agreement to resolve certain claims against Novo Nordisk.  The states separately entered into Settlement Agreements with Relators and Novo Nordisk to resolve certain state claims.  The United States filed Notices Intervention In Part and Declination In Part in each of the actions on July 27, 2017.

In joint stipulations of dismissal filed in each of the above captioned cases on August 3, 2017, the United States, the Named Plaintiff States,[1] and Relators requested that the operative complaint, the United States' Notices of Intervention in Part and Declination in Part and any orders with respect to the notices, the stipulations of dismissal and proposed orders, and all filings subsequent to the Court's entry of orders on the stipulations of dismissal be unsealed but that other pre-election filings remain under seal and not made public.[2]

---

[1] The City of New York was also a party to the joint stipulation of dismissal filed in *United States et al. ex rel. Ferrara et al. v. Novo Nordisk, Inc., et al.*, Civil Action No. 11-0074 (RBW) ("*Ferrara* case").

[2] In *United States, et al. ex rel Kennedy v. Novo A/S et al.*, Civil Action No. 13-1529 (RBW) ("*Kennedy* case") and the *Ferrara* cases, the joint stipulations requested that the Relators' notice of dismissal as to claims on behalf of the City of Chicago and the order entered with respect to that Notice be unsealed.  There were additional filings regarding the claims on behalf of the City

On September 1, 2017, the Court held a telephonic conference with the parties about the joint stipulations of dismissal.  In that conference, the Court requested that the United States submit further briefing in support of the requests in the joint stipulations of dismissal to keep certain pre-election filings under seal.  The Court entered orders consistent with the Joint Stipulations of Dismissal on September 1, 2017.

## DISCUSSION

**I.    The False Claims Act should be interpreted to require that the government's extension requests remain under seal.**

The FCA, and its *qui tam* provision in particular, are "unique in the law." *United States ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715, 720 n.2 (9th Cir. 1994).  Although *qui tam* relator-plaintiffs may initiate suit under the FCA, Congress has assigned to the Attorney General the responsibility to investigate suspected violations "diligently" and to bring a civil action if a violation is found. 31 U.S.C. § 3730(a).

Congress required that FCA-based *qui tam* complaints be filed and kept under seal in order to protect the government's investigative processes.  The seal exists "to allow the Government an adequate opportunity to fully evaluate the private enforcement suit and to determine . . . whether it is in the Government's interest to intervene and take over the civil action." S. Rep. No. 345, 99th Cong., 2d Sess. at 24 (1986), *reprinted in* 1986 U.S. Code Cong. & Admin. News 5266, 5289; *see also United States ex rel. Summers v. LHC Group, Inc.*, 623 F.3d 287, 296-98 (6th Cir. 2010) (discussing the Senate Report and the purposes of the FCA seal).  The seal not only permits the government to investigate possible violations of the FCA but also guards against premature

_____

of Chicago in the *Kennedy* and *Ferrara* cases which currently remain under seal because they were filed prior the Court's September 1, 2017, unsealing order in those cases.  The United States plans on filing a separate motion in the *Kennedy* and *Ferrara* cases requesting that those filings be unsealed.

disclosure of sensitive criminal investigations that often are carried on in tandem with the civil investigation.  *See* S. Rep. No. 345 at 24, *reprinted in* 1986 U.S.C.C.A.N. at 5289.

The Attorney General—acting through the Civil Division of the Department of Justice (DOJ), Commercial Litigation Branch, and Offices of the United States Attorney nationwide—oversees investigations into hundreds of *qui tam* complaints annually.  These investigations commonly require more than 60 days to complete and, as a result, government attorneys annually file, under seal, hundreds of requests to extend the seal and the time within which to make an intervention decision, as happened here.

The FCA specifically requires that the government demonstrate good cause for extensions of the seal and the time to make a decision.  31 U.S.C. § 3730(b)(3).  To demonstrate good cause, the government must reveal, at least to some degree, the details and progress of its investigations.  Hence, the government's memoranda in support of its requests for extensions of the seal typically inform the courts of the actions taken in furtherance of the investigations, the progress made, and the government agencies and personnel involved.  As the memoranda could contain information protected by the government's law enforcement/investigatory files privilege,[3] and because the very

---

[3] Courts have consistently recognized the law enforcement/investigatory files privilege.  *See, e.g.*, *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341 (D.C. Cir. 1984) ("There surely is such a thing as a qualified common-law privilege . . . for law-enforcement investigatory files.") (citation and footnote omitted); *accord Startzell v. City of Phila.*, 2006 WL 2945226, at *4 (E.D. Pa. Oct. 13, 2006) (citing cases recognizing privilege). A similar privilege was codified in Exemption 7 to the Freedom of Information Act (FOIA), 5 U.S.C. § 552(b)(7). *See, e.g.*, *Abdelfattah v. DHS*, 488 F.3d 178, 184-86 (3d Cir. 2007) (discussing Exemption 7). The Supreme Court has given a broad reading to the definition of the phrase "records or information compiled for law enforcement purposes" contained in that exemption.  In *John Doe Agency v. John Doe Corp.*, 493 U.S. 146 (1989), the Court held that documents related to an audit that became part of a grand jury investigation seven years after they were created were exempt from disclosure under FOIA.  The Court acknowledged that FOIA evidences a Congressional recognition that law enforcement agencies have a legitimate need to keep certain records confidential so as not to be hindered in their investigations.  *Id.* at 156.

purpose of the FCA's seal is to protect the government's investigative processes, the government always requests that the seal extension applications be filed under seal and remain under seal and *in camera*.  Congress recognized the need to protect these private communications between the government and the court when it expressly provided that these extension requests "shall be filed *in camera*," thus not even shared with the *qui tam* relator who filed the case. 31 U.S.C. § 3730(b)(3).

Moreover, the statute does not authorize unsealing the applications of the United States for extension even though it specifically authorizes the unsealing of the complaint. *See* 31 U.S.C. § 3730(b)(2); *see also United States ex rel. Stephens v. Prabhu*, 1994 WL 761236, at *1 (D. Nev. Dec. 9, 1994) ("Neither that section nor any other section of the FCA, however, directs the court to unseal the motions for enlargement of time filed *in camera*."); *United States ex rel. Couglin v. I.B.M.*, 992 F. Supp. 137, 140 (N.D.N.Y. 1998) ("However, section 3730 only provides for the unsealing of the complaint and no other section of the False Claims Act references the unsealing of any other documents filed with the court."). Thus, the statute creates the inference that government applications for extension of the seal and the time for making a decision to intervene should remain under seal.

## II.     The seal extension requests and other pre-election filings remaining under seal contain protected information.

Although the Supreme Court has recognized that there is a strong presumption in favor of access to documents filed with the court, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), that presumption is not absolute.  *See generally Leucadia. Inc. v. Applied Extrusion Techs. Inc.*, 998 F.2d 157, 164 (3d Cir. 1993) (holding that there is no common law presumption of access to discovery motions and supporting materials that are "ordinarily inaccessible to the public"). Moreover, the Seventh Circuit in *United States v. Corbitt*, 879 F.2d 224, 228 (7th Cir. 1989), held

that this presumption should not apply to materials submitted to the court under seal. "Where the judicial records are confidential, the party seeking disclosure may not rely on presumptions but must instead make a specific showing of need for access to the document." *Id.*

When determining whether to restrict the public's access to court documents, the court must "weigh [] the interests advanced by the parties in light of the public interest and the duties of the courts." *Nixon*, 435 U.S. at 602.  In *Corbitt*, the court noted that while "the common law right of access creates a 'strong presumption' of public access . . . this presumption should not apply to materials properly submitted to the court under seal." 879 F.2d at 228 (citation omitted).

There can be no doubt that the extension requests were submitted properly to the Court under seal within the dictates of the FCA.  No one has advanced a specific showing of a need for access. Thus, these documents fall into the narrow category of documents where the presumption of public access does not apply.

In these actions, the United States, the Named State Plaintiffs, and Novo Nordisk reached a settlement of certain claims and the United States intervened in part and declined in part.  The Relators' operative complaints, the United States' Notices of Intervention In Part and Declination in Part, the Joint Stipulations of Dismissal filed by the United States, Relators, and the Named Plaintiff States, and the Orders of dismissal have been made public affording for the transparency and access typically provided by our courts.  There remains, however, a very strong governmental and public policy interest in continuing the seal on the extension requests and other pre-election filings, and there is no need for unsealing them.  The extension memoranda and certain other pre-election filings tell the story of the government's investigation of this case.  They reveal the government's investigatory techniques, decision-making processes, and reasoning that apply in

hundreds of similar cases in which the government must decide whether and how to conduct enforcement litigation.

To an experienced judge or veteran prosecutor, the investigative activities disclosed in the seal extension motions and other pre-election filings may appear obvious or routine. But to those outside the government and the judiciary, it would be a valuable guide to how civil prosecutors do their work. Revealing these matters to the public would benefit a multitude of defendants and potential defendants who are subject to fraud investigations, making the government's job of ferreting out and prosecuting fraud far more difficult. Defendants would "gain insight into the [government's] general strategic and tactical approach to deciding when suits are brought, how they are conducted, and on what terms they may be settled." *FTC v. Grolier Inc*., 462 U.S. 19, 31 (1983) (Brennan, J., concurring). Because these problems are inherent in the possible revelation of the internal workings of any government investigation, it has long been established that investigatory materials must be protected even after that investigation is over.

**III.     Unsealing seal extension motions and other pre-election filings creates a chilling effect and undermines the effective enforcement of the False Claims Act.**

Unsealing the extension requests and other pre-election filings would have a chilling effect on the future preparation of such briefs. In particular, unsealing the extension motions would likely lead the government to be more circumspect in future cases in revealing to the courts the course of its investigations and the government's research and decision-making. This necessary circumspection in turn would reduce the government's ability to show good cause for any seal extension. Thus, unsealing the extension requests here would interfere with the efficient enforcement of the FCA and stand in the way of the courts' desire for the kind of "specific factual information" in support of extension requests that the courts seek when deciding whether to extend the seal and government evaluatory period in *qui tam* actions.

Moreover, DOJ has concluded that unsealing the extension briefs is inconsistent with the purpose of the FCA and undermines anti-fraud law enforcement efforts.   DOJ has been forthcoming in its disclosure of information to the courts in such requests, in order to provide the courts with information on which to base their decisions regarding whether there is "good cause" for an extension.   Because DOJ is the agency charged with enforcement of the FCA,[4] DOJ's interpretation of the FCA on this issue is entitled to deference.   *See generally Commonwealth of Mass. v. FDIC*, 102 F.3d 615,621 (1st Cir. 1996) ("An established administrative practice interpreting a statute may be entitled to deference even if not yet reduced to specific regulation.") (citing *FDIC v. Phila. Gear Corp.*, 476 U.S. 426, 439 (1986)).

## CONCLUSION

For all of the foregoing reasons, the Court's September 1, 2017 Orders providing for certain pre-election filings in these actions to remain under seal are appropriate.

Respectfully submitted,

CHAD A. READLER
ACTING ASSISTANT ATTORNEY GENERAL

CHANNING D. PHILLIPS
UNITED STATES ATTORNEY

By: /s Darrell C. Valdez
    DARRELL C. VALDEZ (D.C. Bar No. 420232)
    Assistant United States Attorney
    U.S. Attorney's Office for the District of Columbia
    555 4th Street, NW
    Washington, DC 20530
    Tel: 202.252.2507
    Fax: 202.252.2599
    Darrell.Valdez@usdoj.gov

---

[4] *See Martin J. Simko Constr., Inc. v. United States*, 852 F.2d 540, 547 (Fed. Cir. 1988) ("[T]he Attorney General is *specifically* authorized to administer such [FCA] claims for the government. No other agency is empowered to act under the statute.") (emphasis in original).

MICHAEL D. GRANSTON (D.C. Bar No. 446258)
JAMIE ANN YAVELBERG (D.C. Bar No. 445473)
WILLIAM E. OLSON (D.C. Bar No. 480087)
Attorneys, Civil Division
Commercial Litigation Branch
P.O. Box 261, Ben Franklin Station
Washington, D.C. 20044
Tel: 202.305.3905

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of September 2017, a true and correct copy of the above and foregoing was filed via CM-ECF and was mailed by first-class mail and sent by e-mail to:

Sarah M. Frazier, Esq.
Berg & Androphy
3704 Travis Street
Houston, TX 77002

Greg T. Kinskey
Assistant Attorney General
Office of the Texas Attorney General
Civil Medicaid Fraud Division
P.O. Box 12548
Austin, Texas  78711-2548

Lawrence J. Carcare II
Deputy Attorney General
Medicaid Fraud Control Unit
Office of Indiana Attorney General Greg Zoeller
8005 Castleway Drive
Indianapolis, Indiana 46250

Kenneth A. Wexler
Kara A. Elgersma
Wexler Wallace LLP
55 W. Monroe, Suite 3300
Chicago, Illinois 6060

Erika A. Kelton, Esq.
Larry P. Zoglin, Esq.
Phillips & Cohen LLP
2000 Massachusetts Ave., N.W.
Washington, DC 20036

Ann Lugbill, Esq.
Murphy Anderson PLLC
2406 Auburn Avenue
Cincinnati, OH  45219

Mark Hanna, Esq.
Murphy Anderson, PLLC

11

1401 K St. NW, Suite 300
Washington, DC 20005

Gregory Y. Porter, Esq.
Bailey & Gasser LLP
910 17th Street, NW
Washington, DC 20006

Todd Bailess, Esq.
Bailess Smith PLLC
120 Capitol St.
Charleston, WV 25301

David Stone, Esq.
Robert Magnanini, Esq.
Stone & Magnanini LLP
100 Connell Dr #2200
Berkeley Heights, NJ 07922

Christopher M. Nelson
Ross M. Wolfe
The Weiser Law Firm
22 Cassatt Ave.
Berwyn, PA 19312

Gene S. Woo
Nicholas Campins
California Department of Insurance
Fraud Liaison Bureau
45 Fremont Street, 24th Floor
San Francisco, CA 94105
Gene.Woo@insurance.ca.gov

Harpreet K. Khera
Deputy Bureau Chief
Special Litigation Bureau
Office of the Illinois Attorney General
100 W. Randolph. St., 11th Floor
Chicago, IL 60654

Paul Kalb
Sidley Austin LLP
1501 K Street, N.W. #600
Washington, DC 20005

Jaime L.M. Jones
1 S Dearborn St,
Chicago, IL 60603


/s Darrell C. Valdez
Darrell C. Valdez
Assistant United States Attorney